UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 11-338(AET) |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF ORDER DIRECTING DEFENDANT TO PAY RESTITUTION** |
| Eric BREISACHER, | |
| Defendant. | |

THOMPSON, U.S.D.J.

This case presents a question brought with increasing frequency before courts in this Circuit and around the country: namely, whether a sentencing court may award restitution under 18 U.S.C. § 2259 to victims depicted in child pornography, from a criminal defendant who received, possessed, and may have distributed the images, but who was not directly involved with the creation of such images or with the victim's original abuse. As explained below, the Court believes that a restitution award may be appropriate under these circumstances, and consequently has ordered such relief.

I.  Background

On May 19, 2011, Defendant Eric Breisacher pled guilty to a one count Information charging him with the knowing and willful possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (2). At the hearing and under the Defendant's written plea agreement of November 5, 2010, the Defendant allocuted to using various file sharing programs to amass a collection of child pornography consisting of 1,064 images and 786 videos. *See* (PSR ¶ 20). The images and videos included depictions of minors being raped, restrained and subjected to other sadistic or masochistic conduct. *See* (*id.* ¶ 19). Following the plea, the

1

Government forwarded the Defendant's collection of child pornography to the National Center for Missing and Exploited Children ("NCMEC") with a request that the images be reviewed for identified children. *See* (*id*. ¶ 22). After reviewing the collection, NCMEC identified victims depicted in 277 image files and 166 video files. *See* (U.S.A. Br. in Support of Restitution, Ex. A) [23]. Four of the victims identified by the NCMEC submitted restitution claims: Vicky (the victim in the "Vicky" series), Misty/Amy (the victim in the "Misty" series), L.S (the victim in the "Jan_Feb" series), and Cindy (the victim in the "Cindy" series). (*Id*.). Following a status conference on May 25, 2012 in which the parties indicated that the issue of restitution would be contested in this matter, the Court ordered that supplemental briefing concerning the issue of restitution be filed by June 15, 2012. [21]. Sentencing was set for June 22, 2012. [22]. At sentencing the Court imposed a term of 78 months of imprisonment and five years of supervised release with conditions. [25]. After considering the submission of the parties and the arguments made on the record during the sentencing hearing, the Court additionally ordered that the Defendant pay restitution in the amount of $10,000 to each of the identified victims. (*Id*.)

II.   Discussion

The mandatory restitution provision of the Protection of Children Against Sexual Exploitation Act directs the district court to order a defendant to pay restitution to the "victim" of a crime of child sexual exploitation. *See* 18 U.S.C. § 2259(a)-(b). "Victim" is defined as "the individual harmed as a result of a commission of a crime under this chapter." *Id*. § 2259(c). Taken together, these provisions tie restitution awards to harms resulting from a defendant's conduct. Consequently, the United States Court of Appeals for the Third Circuit has required a finding of proximate causation to determine whether a victim is entitled to restitution under § 2259. *See United States v. Crandon*, 173 F.3d 122, 125 (3d Cir.1999). Under this standard, the

2

Third Circuit has described proximate cause as requiring that a defendant's actions be a "substantial factor in causing the ultimate loss." *See id*.

The Defendant has argued that restitution is not warranted in this case as "there is no specific proof of the actual harm caused by Breisacher." (Def.'s Opp'n at 4). The Defendant notes that the psychological records introduced by the Government in support of its application for restitution "reference the type of harm suffered by a victim of sexual abuse, magnified by the memorialization of such abuse for the purpose of child pornography," but contends that none of the proof specifically reference the harm caused by the *Defendant's* possession of these images. *See* (*id*. at 4–5). By contrast, the Government contends that the restitution requests and supporting documentation provided by the identified victims in this case establish that the Defendant's conduct-- i.e., obtaining sexually explicit images of the victims and sharing those images with others over the Internet through a peer-to-peer file sharing network-- has in fact proximately caused harm to each of these victims. (U.S.A. Br. in Support of Restitution, at 9).

After considering all of the arguments, the authority before it, and the broad purpose underlying the restitution provision, the Court finds that the Government has met its burden in establishing that at least some of the identified victims' losses can be said to be proximately caused by the Defendant's crime and, consequently, that a restitution award is appropriate under these circumstances.

A. Rationale for Restitution

The Court begins by acknowledging that "[i]t is beyond dispute that child pornography victims suffer from trauma as a result of their sexual abuse, and that the knowledge that anonymous individuals continue to view and distribute images of their abuse exacerbates the victims' feelings of fear, anxiety, and powerlessness." *United States v. Monzel*, 746 F.Supp.2d

76 (D.D.C. 2010). As the Supreme Court has noted, "[t]he materials produced [in child pornography] are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber*, 458 U.S. 747, 759, (1982); *see also Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come."). Far from being mere bystanders, courts have recognized that consumers of child pornography such as the Defendant who download and share such images, whether through paid services or via peer-to-peer networks supported by advertising, directly participate in the victimization of children by creating a market for the abuse by providing an economic motive for creating and distributing the materials. *See Osborne*, 495 U.S. at 109–12; *Ferber*, 458 U.S. at 755–56. The Third Circuit has specifically addressed the harm caused by possessors of child pornography concluding that such defendants' consumption of these images "directly contribute to this continuing victimization." *United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007).

Recognizing this effect, Congress has roundly condemned and sought to punish the possession of child pornography. *See* Child Pornography Prevention Act of 1996, 18 U.S.C. § 2251 ("[T]he existence of a traffic in child pornographic images ... increas[es] the creation and distribution of child pornography ...," and "prohibiting the possession and viewing of child pornography will ... eliminate the market...."); *see also* Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub.L. No. 108-21, § 401(b), (attempting to amend 18 U.S.C. § 3553(b)(2) to restrict the authority of the district courts to depart from the Sentencing Guidelines in sexual offense and child pornography cases). As the Third Circuit has explained, Congress' criminalization of the possession of child pornography "discourages its production by depriving would-be producers of a market." *United States v. Ketcham*, 80 F.3d

4

789, 793 (3d Cir.1996). Moreover, recognizing the losses sustained by victims of child pornography including the need for medical services relating to physical, psychiatric, or psychological care, physical and occupational therapy or rehabilitation, as well as representation costs, Congress has mandated that restitution be provided to such victims. *See* 18 U.S.C. § 2259.

Misty/Amy, Vicky, Cindy and L.S. have submitted, through the Government, detailed victim impact statements and expert estimates of total loss as a result of the crimes of sexual exploitation to which they have been subjected. From reviewing these statements and the accompanying treatment reports of the identified victims, it is clear to the Court that many of the alleged losses arise out of the need for ongoing psychological treatment as a result of the knowledge that the Defendant and others have invaded, and continue to invade, their privacy and that the Defendant and others gain prurient pleasure in the images of their abuse.

The Court joins the majority of its sister courts in this Circuit in finding that the "substantial factor" test articulated by the Third Circuit in *Crandon* allows for restitution in cases of "concurrent cause," where multiple actors do something which, on its own, would be sufficient to bring about the harm. *See Crandon*, 173 F.3d at 126 (noting that "it was entirely reasonable for the District Court to conclude that the additional strain or trauma stemming from Crandon's actions was a substantial factor in causing the ultimate loss."); *see also United States v. Hardy*, 707 F.Supp.2d 597, 612 (W.D.Pa. 2010); *United States v. Olivieri*, No. 09-743, 2012 WL 1118763, at * 5 (D.N.J. April 3, 2012); *United States v. Barkley*, No. 10-143, 2011 WL 839541, at * 5 (March 7, 2011). *But see United States v. Covert*, No. 09-332, 2011 WL 134060, at * 9 (W.D.Pa. Jan 14, 2011) (declining to award restitution finding that the Government did not meet its burden to show that the defendant's possession of two of the victim's images caused the victim a specific loss beyond the generalized harm she suffered and continues to suffer). From

5

the materials submitted by the Government, it is clear to this Court that, though this Defendant was one of many who downloaded images of the identified victims' abuse, his acts were a substantial factor in the harms they suffered. Therefore the Court finds that the Government has met its burden in establishing that the Defendant's crime proximately caused at least some of the losses sustained by the identified victims.

      B.      Amount of the Restitution Award

Having held that the Defendant proximately caused some of the losses sustained by the identified victims, the Court is confronted with the question of what restitution award is properly due to the identified victims. Although § 2259(b)(1) generally directs the Court to award the full amount of the victims' losses, it is not immediately obvious what amount should be awarded in this case given that the Defendant did not proximately cause all of the damages the victims suffered. In fashioning a restitution award where multiple defendants have contributed to the victims' losses, 18 U.S.C. § 3664(h) provides that: "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."

In its arguments before the Court, the Government did not endorse any particular formula or method for determining the amount of losses that the Defendant proximately caused. The Government merely summarized the amount each privately represented victim requested. Counsel for Vicky seeks a restitution award of $761,259.35, representing certain future treatment and counseling expenses as well as educational and vocational counseling expenses in addition to litigation costs and attorney's fees. (U.S.A. Br. in Support of Restitution, at 2–3). Counsel for Misty/Amy requests restitution in the amount of $3,388,417, which consists of $512,681 in

future treatment and counseling expenses, $2,855,173 in lost and reduced income, $17,063 in expert witness fees, and approximately $3,500 in attorney's fees and other costs incurred. (*Id.* at 3). Counsel for Cindy seeks total restitution of $65,776.40 which consists of $36,233.63 in past treatment and counseling expenses, $768.31 in prescription costs, $23,101.25 in attorney's fees and $5,673.21 in litigation expenses as of January 7, 2012. (*Id.*). Finally, Counsel for L.S. requests a restitution award of $150,000, representing the minimum damages of child pornography victims in civil suits under 18 U.S.C. § 2255, although Counsel documents $1,853,900 in damages, consisting of $1,841,400 in future treatment and counseling expenses, $7,500 in expert witness fees and $5,000 in attorney's fees. Noting the modest nature of the Defendant's conduct in terms of the entire losses sustained by the identified victims, Defense counsel has argued that the Defendant should not be ordered to pay restitution for all of the victims' losses. (Def.'s Opp'n at 6–7). The Court agrees with the Defendant.

Although the Court notes that the losses claimed by the victims clearly fall within the scope of the Defendant's conduct as an active participant in a market that continues to exploit the identified victims and encroach on their privacy, the Court finds that apportioning a discrete amount of the victims' losses to the Defendant is in the interests of justice given a case on these facts where many different individuals have, and unfortunately likely will continue to, access and possess similar images of the identified victims. While a number of courts have rather ingeniously attempted to create various mathematical formulas to devise a proportional share of the losses attributable to the Defendant based on a review of other indicted defendants or an estimation of perpetrators at large, the Court recognizes that mathematical precision is not required in the damages calculation for a restitution order and that the Court need only be able to estimate the victims' losses with some reasonable degree of certainty. *See United States v. Doe*,

488 F.3d 1154, 1159–60 (9th Cir. 2007); *Barkley*, 2011 WL 839541, at *5. Having reviewed the identified victims' incurred expenses and estimation of future costs and recognizing that a district court has leeway to "resolve uncertainties 'with a view towards achieving fairness to the victim,'" *United States v. Innarelli*, 524 F. 3d 286, 294 (1st Cir. 2008), the Court believes that an award of $10,000 per victim is an appropriate amount to compensate the identified victims for their losses as a result of the Defendant's conduct. For all of the reasons stated above, the Court has ordered such relief.

/s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

Date: July 6, 2012